Final case on our call this morning. Case number 106546, John Doe A v. Diocese of Dallas et al. v. Diocese of Belleville et al. Mr. Welch, you may proceed. Mr. Welch, you may proceed. Mr. Welch, you may proceed. Mr. Welch, you may proceed. Mr. Welch, you may proceed. Mr. Welch, you may proceed. Mr. Welch, you may proceed. In 1895, in the case of the Board of Education V. Blodgett, this court said that the immunity from suit which arises by operation of the statute of limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Since 1895, this court on a number of occasions, in fact numerous occasions, has reaffirmed the finding in Blodgett, as recently as Commonwealth Edison, Sundance Homes, Clay v. Kuhl, Sepmeyer, and many, many other cases. Permitting the 2003 amendment to retroactively revive plaintiff's time barred claims would affect a sea change in the law that has been part of Illinois jurisprudence for approximately 115 years. To make this change is neither justified or appropriate. Let me move on, if I may, to the legislative history of the 2003 amendment. Because the legislative history of the amendment supports the construction that the legislature did not intend to retroactively revive time barred claims. The amendment was sponsored by Representative James Brosnahan, and he stated on the record, immediately prior to the vote in July of 2003, as follows, and I quote, I want to make it perfectly clear, as far as the legislative intent, what I am not trying to do with this bill is to revive any causes of action that were the statute of limitations has already expired. He goes on to say, I want to be perfectly clear on that, I think the case law in this state of Illinois is clear. Continuing, he says, for purposes of legislative intent, the intent is not to revive causes of action that have already expired. He goes on to refer to the vested right principle, he says, I think that is a vested right that people have once the statute has expired, and we're not trying to do that. That's what he said on the floor. Do you find the statute ambiguous, Mr. Wells? Is that why we're into the legislative debates? I do not. But I think it's instructive, because if you consider the tests under Commonwealth, the first prong being trying to ascertain legislative intent, I think the legislative history is instructive. So, I guess I don't completely understand that answer. I mean, is there an ambiguity? Is there something that, I mean, typical statutory construction would be the language first, right? Yes. And is there some part of the language that, and I'm not doubting that that's what the representative said, but I am wondering how we get there. Well we get there because of the claims by the plaintiff in this case that what the legislature intended to do was to reach back and revive time-barred claims. That's what, that's the argument made by the plaintiff in this case. So to rebut that argument, I think it's instructive to see what Representative Rosnahan said. Okay. Let me, we have a follow-up question. You said legislative intent. Doesn't it more clearly define as having that intent stated explicitly within the body of the statute? Isn't the first prong of the Commonwealth case whether the statute expressly states that there are, that they are retroactive? That's correct. If there's a... I guess my point is a simple one. It's not simply delving into the statute to determine legislative intent, but looking at the statute to see if there's an actual express statement relative to retroactivity. That is correct. Under the first prong, you look as whether there was an express expression of legislative intent that it reached back and revived. And I don't see that in the language of the statute. Although I think the plaintiffs would argue that Section E says the section applies to actions commenced on or after that date. Yes. Okay. And why does that not... Well, I think what, I want to make one comment. Justice, Representative Rosnahan referred to the case law, so I think we can assume that he was aware of the pronouncements of this court. And I think to the extent that the statute can be retroactive, to the extent it applies to causes of action that have accrued on July 24, 2003, but it cannot apply to time bar claims. And if you look at Illinois cases since Blodgett, including Commonwealth, Kavanaugh, Henrich, the legislation cannot reach back and resuscitate time bar claims such as the claim of the plaintiff in this case. But it's up to us to determine whether the language, and I think it would be the second portion of that section that says actions commenced on or after that date, is sufficiently specific to show an intent to be retroactive. Is that correct? That's correct. Because the plaintiff is saying it applies to any action filed. It doesn't make any difference when it accrued, as long as it comes within the statute. That is the plaintiff's argument, yes. But under Illinois law, you can't reach back and resuscitate the plaintiff's claim in this case. So you're saying the language is plain because prior precedent dictates it can't, whatever it means, it doesn't mean to revise barred claims. That's correct. And this Court has looked at that language as it was contained within prior amendments to the statute and concluded that that language did not justify reaching back and resuscitating or reviving previously barred claims. And that's my point. My point is that the statute itself has to have some indication of retroactivity or not. And if we can glean it from the statute itself, I mean, accepting your position as correct, that there is not anything in the statute that would indicate that retroactivity was presumed. I mean, we really don't have any reason to go into the legislative debates. That was my point on that. And I don't want to oversimplify your position, but I would like to see whether I understand your position, as I understand your position is, that you're not looking at this as if it's a substantive matter, right? It's a procedural matter that would typically be open to retroactivity. But I think your position is that applying retroactivity in this instance would have constitutional ramifications to it because the statute had already run. Is that where you're at? Or are you saying that this isn't a procedural statute and could never be applied retroactively? Well, if we want to look at the rationale in Kaveny, which adopts the procedural substantive approach, and as I understand your opinion in Kaveny, you say that if it's a substantive matter, then it cannot be retroactive. And I cannot think of anything more substantive than the reviving of a barred cause of action. So we are in a little different. I thought your posture was you're not arguing that vehemently that this isn't procedural, but you're saying that even procedural, you still have to go to the next step, would be a constitutional analysis, and that's something that has been barred prior because of the time running, would implicate due process. Correct. It would be inappropriate because of the due process clause in depriving us of a right of property that we had, yes. Let me talk a little bit about Commonwealth Edison, because I think the language used there may be helpful. And in Commonwealth Edison, this court specifically refers to the Henrich case, a decision by Justice Freeman, and they quoted specifically from the Henrich case and language by Justice Freeman where they said, an immunity from prosecution in a suit is as valuable to the one party as the right to demand or prosecute the suit is to the other. And then this court goes on to say, put simply, the legislature lacks the power to reach back and breathe life into a previously barred claim. And that simply is our position, that the legislature hadn't, first of all, I don't think they intended to do that, but if there was such a... That really concerns itself with the second prong of Commonwealth, doesn't it? Yes, it does, absolutely. But counsel, didn't our, you mentioned this earlier, Kavini, Kavni, however you pronounce it, didn't that change Commonwealth Edison's retroactivity approach? Well, there's a different approach and there's a concurring opinion in Kavni, concurring in the result, but disagreeing with the approach on the section four of the statute on statutes. And yes, I think you can make, you can take the position that Kavni changes the approach or the analysis, the result remains the same though, under Kavni, Henrick, or Commonwealth, any of them. And I can't, you know, that approach, and you look at the section four of the statute of statutes, this type of revival would be impossible under Kavni, impossible under Commonwealth, impossible under Henrick. Let me mention, if I can, refer to the fifth district's opinion, and perhaps where I disagree with it a little bit. The fifth district opinion, and the plaintiffs in this case, rely heavily on Commonwealth Edison. And I think the fifth district opinion only deals with part of Commonwealth Edison. The fifth district opinion talks about a balancing test that should be adopted, and then goes on to say that constitutional violations of due process rights are justified and appropriate if they are not, quote, unreasonable, close quote. First of all, I don't think Commonwealth Edison, or any case since Commonwealth Edison, says that a balancing test is appropriate under any circumstances similar to this, or any circumstances other than where you have a tax rate increase under consideration. And certainly, there's no Illinois decision prior to, or subsequent to, the Commonwealth where this unreasonable, reasonable violation of due process rights is referred to. There's no decision by this court that says you can violate due process rights, you can take away an individual's property rights, as long as it's not unreasonable. This court's decision as to whether it is proper for the legislature to retroactively revive time-barred claims has far-reaching implications, not only in this lawsuit, but it will apply to teachers, coaches, healthcare workers, child advocates, and child care workers. The Diocese of Belleville respectfully requests that this court follow the 115 years of legal precedent, the legislative history of the 2003 amendment, and the important due process interests at stake, and rule that the plaintiff's claims were properly dismissed by the trial court as time-barred, and that they cannot be retroactively revived by subsequent legislative amendments. Thank you. May it please the court, counsel. My name is Kevin Horner, and I'm here this morning on behalf of Father Roberts. And I believe Mr. Wells covered the waterfront in terms of our position, but I wanted, as time permits, to add a few comments on Father Roberts' behalf. Your Honor, just like all the other cases that come before you in this courtroom, the parties to this lawsuit have agreed to disagree. We disagree on the lessons to be learned from this court's 100-plus years body of work of precedent, and in particular, we disagree on the instruction and guidance this court provided with its opinion in Commonwealth Edison. The majority opinion in the case at bar in Doe v. Diocese of Dallas et al. ignored and summarily dismissed this court's body of work by merely stating over 100-plus years, by merely stating that it was pre-Commonwealth Edison, and ignored its own decision in Galloway by stating that it disagreed with it, and offered no additional analysis on either of these cases. In the Commonwealth Edison case as it applies to this case, I reach the same conclusion one would whether you apply it to this case before or after Commonwealth Edison, and that is because the Illinois courts do not revive time-barred claims. The reason is this. At the end of the day, whether you consider this case before or after the Commonwealth Edison case, the legislature in Illinois does not have a free pass to violate our constitutional rights, and I hope we can all agree on that. It is our position that the retroactive application of the 2003 amendment to the Child Sexual Abuse Act violates these defendants' due process rights, and I too want to spend a little time talking about Commonwealth Edison, but before I do, I do not pretend to tell this court what it meant by its opinion in that case. We as attorneys merely make observations of what we believe you meant. We all know that the Commonwealth Edison court adopted the Landgraf test, which in its first prong says that if the legislature indicates its temporal reach, then we should apply it absent a constitutional prohibition. I, like Mr. Wells, I don't believe the statute is ambiguous, but let's suppose for purposes of argument that the legislature did intend that it be applied retroactively. Commonwealth Edison requires that we determine is there a constitutional prohibition against retroactive application, and I believe the conclusion has to be yes. This court has consistently held that a revival of an already time-barred claim violates a defendant's fundamental right to due process guaranteed by the Illinois Constitution. Moreover, a defendant's right to the completed time bar is just as valuable and just as worthy of protection as the plaintiff's right to bring suit to begin with. The legislature cannot interfere with these rights, and there is a litany of cases that support this proposition dating back, as counsel suggested, to 1895 with the Blodgett case and this court's opinion in 1997 in MEH versus LH. I want to spend a minute now talking about what the Commonwealth Edison case does not do. The majority opinion from the Fifth District in this case would have us believe that Commonwealth Edison overruled roughly 115 years of case law precedent in this state. We read that case differently. Commonwealth Edison, I believe, did not relax the constitutional prohibition against retroactive revival of time-barred claims. This court affirmed this when it examined the Henry case in the Commonwealth Edison opinion, and I believe when you read Commonwealth Edison, as much time as this court took in discussing the Henry case and how it related to the disposition in the Commonwealth Edison case, you could just as easily be talking about this case, the Doe versus Diocese of Dallas case. The court explained applying the amendment in Henry would have meant imposing a period of retroactivity of almost four years, and I believe this court struggled a little bit with that length of time as compared to a period of six weeks of retroactivity that was being dealt with in Commonwealth Edison. You didn't submit a brief in this case? I'm sorry? Did you submit a brief? No, we adopted the brief by the Belleville Diocese. Are these arguments that are included in someone else's brief? Yes. We adopted the Belleville Diocese brief. And you filed that in record? Yes. And that motion was filed and motion was allowed. Here, in our case, by the majority opinion's calculation in the 5th District, we have a period of retroactivity of 13.5 years. In addition to that, applying the amendment on appeal in Henry, as this court explained in Commonwealth Edison, that Commonwealth Edison was still going to have to pay 1994 property taxes. It was just a matter of how much. The court explained that had the position been more like the high school in Henry, I guess my point is when you look at this court's analysis of the Henry and how it distinguished its reasoning in Henry with its decision to retroactively apply a tax rate increase in Commonwealth Edison, we could just as easily be discussing the defendants in this very case. At the end of the day, I believe that neither the legislature nor this honorable court, acting consistent with more than a century of case law, can violate these defendants' due process rights that are guaranteed by the Illinois Constitution. Thank you. Marcy Hamilton You may proceed, Ms. Hamilton. Marcy Hamilton Thank you. May it please the court, my name is Marcy Hamilton and I represent the appellee plaintiff John Doe A. Let me start with the one point of disagreement that we do have with the decision below, and that is the period of retroactivity. The court below incorrectly calculated that the period of retroactivity would run from 1990. The court said that John Doe A. reached the age of 18 in 1988. There was a two-year statute of limitations. In fact, under the common law, it was also a discovery rule. And so the claim in this case is that John Doe A. would not have accrued under either pre-1991 theory or now before the date of discovery. And everybody agrees that the date of discovery is 1998. And that is the baseline. So the baseline is 1998. If it's a two-year limit, that means that the filing should have been in 2000. If it's a five-year limit, as we're arguing, the filing was timely in 2003. John Doe A. Were there any allegations of repressed memory in this case? Marcy Hamilton No. There are no allegations of repressed memory. John Doe A. So I don't understand the use of December of 98 as being the starting point. That's when he expressed great mental anguish, went to an institution, that he was injured some years ago. Marcy Hamilton The rule under the 2003 amendments, and this was in response to this court's decision in Clay v. Kuhl, is that discovery occurs on the date when the plaintiff has not just understood they were injured, but understood that their current problems were caused by the injury. So the fact that he was told he was injured was not enough. He has to have made the connection. So the discovery, there's an agreement in this case, discovery was 1998. And so the number of years of retroactivity in this case are not 13-and-a-half, they're essentially 2-and-a-half. So that was a very serious error on the part of the court. But even despite that, the court ruled in John Doe A.'s favor using the land graph analysis from the United States Supreme Court, which this court adopted in Commonwealth Edison. I strongly disagree with my colleague's statement that there is a hundred years in this state of rulings that have not been considered. And I strongly disagree with my colleague's statement that there is a hundred years in this state of rulings that control this case. What this court said in Commonwealth Edison is that its doctrine was confused, that sometimes it used a vested rights approach, and sometimes it used legislative intent. In the land graph decision, the Supreme Court said that a hundred years earlier, it would not have permitted retroactivity. But in land graph, the court said they were no longer going to fail to do retroactivity. They were not going to defer to the legislature. They were now going to start always deferring to the legislature unless there was a clear constitutional bar. Counsel, if you'd filed a lawsuit in 2002, and it had been dismissed at that time on the basis of the then-existing statute of limitations, would the period have been revived by the 2003 amendments? If it had been filed before the 2003 amendments, no, Your Honor. And dismissed? No, Your Honor, absolutely not. It wouldn't revive a dismissed claim? No. Why should this case be treated any differently? Because this case was filed after the 2003 amendments, and they were intended to be applied retroactively. The legislature chose the language that was approved in Commonwealth Edison intending retroactivity. It's the identical language. It's also the identical language in land graph in which the Supreme Court said the language of on or after the commencement of this effective date is retroactivity. And so the legislature relied on the fact that this court had said on or after means retroactivity and intended retroactivity here. With respect to the legislative history, it's irrelevant when the language is so clear. The very words approved in Commonwealth Edison were the words chosen here. So the issue in this case is the second prong of land graph in which the court says that the legislative intent is to be deferred to unless there is a constitutional bar. And there are two types of constitutional bars. One is an explicit constitutional bar like the ex post facto clause, but that, of course, is irrelevant in a civil case. The other possibility is that there is a due process issue in a particular case, and Commonwealth Edison borrowed the approach from land graph, which is that the court is required to balance the interest of the legislative intent with the interest of the legislative intent. The interest intended to be served by the legislature. What is the legislature's purpose here? And to balance that against claims of due process made by a defendant. In this case, all of the criteria that you could bring to bear. Yes. If we agree with you, would we be put in a position where we would be overruling MEH versus LH in its progeny? You would be overruling the vested rights approach, which was rejected in Commonwealth Edison. With respect to retroactivity of a statute of limitations revival, MEH did not deal directly with this issue, but rather dealt with the rest of the statute of limitations. And under this court's rulings, you are supposed to consider the individual statute in front of you and the individual barriers or burdens that are put on the defendant. The legislative purpose in this case is a compelling interest. There's no question there's a compelling interest in the protection of children. The problem that is raised by the defendants is they're claiming detrimental reliance. But it's very hard to claim detrimental reliance when the standard is a discovery rule. They were never going to have assurance that discovery occurred until they heard from the plaintiff that discovery had occurred. This is not a statute of limitations, it's just a number of years. So they did not have the right or the power to throw out all of their records or forget what had happened in this particular case on any date because they didn't know when discovery would occur. They could never know or predict when discovery would occur. And in this case, they knew they had a pedophile on their hands. They knew in 1967, they knew in 1968, they knew in the 80s, they knew in the 90s, they knew that Father Roberts was abusing children. And so it is nonsensical for them to argue that there's detrimental reliance in any way, shape or form in this case, or that they would have acted differently at the time they concealed his abuse from the plaintiff based on whether or not the claim was brought in 2000 or 2003. That's just nonsense. Of course there's no detrimental reliance when it's a two and a half year period and when they knew this individual had abused multiple children and when they knew at the time they covered up that he was an abusing individual. Now, this court has pointed a couple of times to another factor, which was does the new rule, the new statute of limitations or whatever rule it is the legislature creates, does it create a new legal consequence to completed actions? And with the statute of limitations retroactivity, the only thing that has changed is that, is the date that the plaintiff can go to court. The legal obligations at the time of the cover up are no different. The burden of proof that's going to be on the plaintiff is no different. The fact the plaintiff is going to have to have proof and corroboration is no different. And so this is very different from the Henrich case. In the Henrich case the school district knew on the date of its action that was being the subject of a lawsuit that it was completely immune from liability. It was immune. It didn't have to do anything to avoid liability. The archdiocese and Father Robert knew on the date of the abuse that in fact they were liable for abuse. And so Henrich cannot be the same case. It's a completely different case. I don't know if you got sidetracked a little bit. You were talking about Landgraf and due process versus the legislative intent. Are you implying a balancing of the two and then determining under the facts of the case which one trumps the other? What Landgraf says is there must be clear legislative intent, which there is here. And secondly, there may be a constitutional barrier. And what this court said in Commonwealth Edison is that the way that you look at that constitutional barrier is a balancing of the interests between the legislative purpose and whatever constitutional violation is being raised. And that's just standard constitutional analysis. And how does it weigh in your favor here? It weighs in our favor because the legislature has a compelling interest in protecting children and in publicly identifying predators. It also has compelling interest in shifting the costs of abuse from the public to the private entities that actually cause the abuse. And so there's a compelling public interest in the statute. But on the side of the defendant, our position is that defendant's arguments of constitutional violation are so weak that they're easily overcome by the compelling interest of the state in protecting children and making sure that those cause abuse are the ones who bear the costs of the abuse. So the balance that therefore weighs in favor of the plaintiff. I'd point out that before the court decided Landgraf, the Supreme Court, they decided Chase Securities. And Chase Securities identified those constitutional problems that would be weighty enough to overcome retroactivity. They must be special hardships or oppressive effects. I think it's very hard to argue that being in court two and a half years after you would have otherwise been in court is an oppressive effect. It certainly would not have changed the way that any rational or reasonable defendant would have been operating. Isn't that how statutes of limitation operate all the time? I mean, they distinguish between when an action's filed. And if it's not timely filed, you're out of the box no matter how meritorious a claim you might have. That's right. Whatever the legislature says is the timing of your filing is what this court has decided in commonwealth it would defer to. And this legislature has decided repeatedly now that it needs to do a better job for child sex abuse victims. And in 2003, this legislature clearly adopted retroactive language in order to capture those individuals it had inadvertently shut out before. So the question is legislative intent. And the intent is identical. And that language is premised on the language as well as actions commenced on or after the date. Yes. Is there any other language anywhere that you rely on? With respect to retroactivity? No, Your Honor. This is the standard language that's used with respect to retroactivity across the country and in the Illinois courts. Isn't there a requirement that the statute has to be judged to determine whether it unfairly affects the interest when accrued of the events that retroactively apply in the statute? Yes, Your Honor. And does that fall under legislative intent or where does that fall? That falls under the balancing issue. That's the second prong of commonwealth. That's the second prong of commonwealth. And the way this court articulated it is that it is, if you look at this court's lengthy discussion of Henrich, it is a subtle balancing of the interest of the state in achieving its goal. And it's a balance of the plaintiffs' legislative purpose against the interest of the defendant having to bear the burden. Balance against what? I mean, unfairness is on one side of the balance. What's on the other side of the balance? Fairness. Fairness to the plaintiffs and unfairness to the defendants. And that's exactly how the court below addressed the issue. And that is how commonwealth. That's correct, but is that how commonwealth addressed the issue? With its lengthy discussion of Henrich, yes. So you're saying they grafted Henrich in total onto that opinion? Well, what they said, no, not Henrich, the reasoning of Henrich. They rejected, this court rejected the reasoning of Henrich implicitly by saying that Henrich may have come out by saying that immunity is enough to avoid retroactivity, but we're not going to show you how to apply Henrich under our new reasoning. And if you apply Henrich under the new reasoning, it takes a lot longer than just saying there's a vested right. You have to figure out what the interests are on each side. You have to figure out where justice and fairness lay. And the court concluded that Henrich was correct in the conclusion, but it rejected the reasoning of Henrich and redid Henrich essentially in two pages of the Commonwealth Edison opinion explaining how you apply the new analysis. And it is our position that if you apply the analysis as directed under that reasoning, Henrich comes out the same way. But this case comes out in favor of retroactivity. Before your time is up, let me just ask one question. Under repressed memory theory, I guess experts come in and will establish that there really was memory. The memory had really been repressed. But under this theory of connect, that's just the injured party saying that I connected then and I suddenly realized that I had been harmed. Are there other cases that's based on that theory of just connect? A plaintiff saying I connect at that moment to establish when he knew? We cited a number of cases from other states, in fact, that talk about the discovery rule and the connection. The problem in this universe, and this is why the 2003 amendments exist, is that there are hundreds of studies now that show that child sex abuse victims need decades to come forward, not just a couple of years. They need decades. They do not understand. Under connect theory? Under this connection discovery theory. They do not understand, one, that what was done to them was wrong. We have that in our brief that we explain at the time he didn't know this was a priest. He thought whatever the priest did was fine. And two, they don't understand by the time all the negative effects appear from the abuse in adulthood, they don't understand that they were caused by the abuse. This is just standard. One of the amicus briefs that was filed in this case is very good on this issue, explaining all of the science that shows that these individuals need a decade to come forward, not just a couple of years to come forward, but decades to come forward. And that's what the plaintiff had under the statute. A plaintiff had under the statute? The plaintiff, under the intent of the 2003 amendments and the plain language, they have until they make the connection. So forever? Whenever. Some plaintiffs make it in earlier years. I've received e-mails from victims in their 60s and their 70s. So yes, it can go on. And Ms. Hamilton, as I understand it, it's a non-issue in this case. There was an agreement as to the date of discovery? There's no debate that 1998 was the date of discovery for purposes of 2003 amendments. The only issue in this case is whether the 2003 amendments are going to be applied retroactively. And is it your position that you heard the representative quoted in legislative debates. I know that there is a conflict between the two sides as to whether the statute is clear on retroactivity. Regardless, it seems like your position would be even if you get to the fact that there's nothing in the statute itself, then you would say that it would be procedural and therefore retroactivity would be applying. We'd get to the same place that I think we spent most of our time on, and that is whether there's a constitutional prohibition to applying it retroactively. Yes, if I may respond, two answers. One, if this Court holds that the language of this statute is not retroactive, it must reverse the result in Commonwealth Edison. It's the same language. Number two, if you look at the record on C-594 and C-595, there are two affidavits by members of the legislature, including Mr. Representative Brosnahan, in which he says he did not mean that the statute was not retroactive. What he meant was that any cases that had been previously litigated and there had been a dismissal on statute of limitations or a dismissal on the merits, those cases could not reappear. So those parts of the record completely undermine the claim to legislative intent that would make less clear the language this Court already said in Commonwealth is clear. Thank you. Yes. My question, you said that in other states the neck theory had been accepted in advance. In Illinois? This discovery rule has been adopted explicitly in the amendments to 2003. I mean, the specific language of the 2003 amendment states it is not enough for the plaintiff to know there was injury. The plaintiff must know both, that there was injury and that the injury was caused by the abuse. And so that theory is codified in the 2003 amendments. Thank you. First, let me go back to Commonwealth Edison. Council has taken the position that in Commonwealth this Court rejects Henry. That's not true. As this Court states in Commonwealth, quote, nevertheless Henry remains relevant in this case insofar as it defines those interests that are protected from legislative interference by the due process clause of the Illinois Constitution. So the Court does not reject Henry. And this Court went to great lengths to quote from Henry and specifically the language that I pointed out before about not being able to revive time-barred claims. And before I get to the, well, let me deal with the language. The Illinois legislature had employed language similar to that used in 2003 in both 1991 and 1993. And in 2003, it had the benefit of the opinions of MEH, which was decided in 1996, and DP, which was decided in 1994 by the 1st District. And both cases hold that the language, the identical language that we're talking about here that's in the 2003 amendment, did not support retroactive revival of time-barred claims. And I think it's fair to assume that the legislature was familiar with the cases. Representative Bosnahan stated on the record that he was. And they understood that by employing the same language that they had employed in 1991 and in 1993, they were not intending that that language in the 2003 amendment should be retroactive. I refer to the language by the Do we do a balancing act, Mr. Wells? Is there a balancing, or if there are due process implications, does that end the inquiry? Or do we look at the competing factors that were raised by Ms. Hamilton? I don't think there is any balancing test, and I don't see any court, including the court and commonwealth, employing a balancing test under the circumstances of this case. What it said when it concludes the decision in commonwealth, the court says, and I quote, unlike the high school situation in Henrich, the subtle judgments concerning the fairness or unfairness applying the new rule do not in this case weigh in Edison's favor. Commonwealth, the court in commonwealth, does not indicate that a balancing test is appropriate under circumstances other than the facts of that case. The adjustment of a tax rate, that's what commonwealth says. The language that the plaintiff quotes, the determination of whether the application of the statute unreasonably infringes upon the rights of those to whom it applies, involves a balancing and discrimination between reasons for and against the application of the statutes to this class of individuals? Not under these circumstances, no. Because I think the court in commonwealth went out of its way to quote the language that it quoted from Henrich. And what they say, what the court, commonwealth court, selects from Henrich is significant. And this court in commonwealth says, put simply, the legislature lacks the power to reach back and breathe life into a previously barred claim. Now, I have to think that there was some reason why Justice McMurrow, in writing that opinion, selected that specific language from Henrich. And why this court said Henrich remains relevant. And it does remain relevant. These two affidavits that were referred to are well after the fact. The 2003 amendments became effective on July 24, 2003. The two affidavits that are referred to are executed on October 8, 2004. They were not what was before the legislature when the legislature voted on this amendment, the 2003 amendment. What was before the legislature is the language that Representative Brosnahan stated on the record that I read to the court previously. That's what they considered, not these after the fact affidavits. How do you address Ms. Hamilton's point that the exact language appeared in the statute in commonwealth where we found retroactivity to be intended? You found it to be intended under the facts of that case, the adjustment of a tax rate. If you go on and you couple Kavanagh, which is also a new statute, a new tax statute dealing with a subchapter, I think, S tax credit, there this court, in you writing the opinion, concluded that you could not have retroactive effect. And you don't employ any balancing test in Kavanagh. So this balancing concept that you see, and it's quoted by counsel from commonwealth Edison, applied to a tax adjustment. It didn't apply in Henrich, it didn't apply in Kavanagh. There are a number of things to cover, but one of the things that I think is important are the statements that the Diocese of Belleville knew all about Father Roberts and that he had abused, I think the statement was multiple children over a period of years. That is not true. It is not in the record. The facts of this case are clear. Father Roberts was not one of our priests. He was in Belleville for one week. You have one incident that occurred. So there is nothing in the record to support what counsel said, and it's just not true. The allegation is that we were negligent. The problem is the person, the people that made the decisions back in 84 as to whether Father Roberts should be permitted to spend a week in Belleville aren't here. So I can't test what that person knew or didn't know, what that person took into account when they permitted Father Roberts to spend that one week there. We did not have the knowledge that suggests it. You can start with Armistead. You can go to Henrick, Commonwealth, Kavanagh. The language changes. Armistead has vested rights. You have the Landgraf approach. But the results don't change. In all of these cases, what the court has concluded is that it is inappropriate, in fact, unconstitutional for the Illinois legislature to pass any type of legislation that reaches back and revives or resuscitates time-barred claims. So the analysis is the same, and the court has used different language. But the results are the same, and you can go back to the 1895 case and the language in that case. The result hasn't changed, the analysis hasn't changed, but there are various different approaches that the results don't change. And again, we would ask that this court reinstate the granting of the motion to dismiss with prejudice. Thank you.